PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ERIC BERNARD SMITH, a/k/a E, a/k/a
Pac-Man, a/k/a Sld Dft 5:03CR12-2,

*Defendant-Appellant.*

No. 05-4111

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CR-03-12)

Argued: March 15, 2006

Decided: June 13, 2006

Before MICHAEL, KING, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Michael and Judge Gregory joined.

## COUNSEL

**ARGUED:** Aaron Edmund Michel, Charlotte, North Carolina, for
Appellant. Amy Elizabeth Ray, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North
Carolina, for Appellee. **ON BRIEF:** Gretchen C. F. Shappert, United
States Attorney, Charlotte, North Carolina, for Appellee.

**OPINION**

KING, Circuit Judge:

Eric Bernard Smith appeals his convictions by a jury in the Western District of North Carolina on two related charges — conspiracy to possess with intent to distribute cocaine and cocaine base (21 U.S.C. § 846), and possession with intent to distribute cocaine base (21 U.S.C. § 841(a)(1)) — as well as his resulting sentence. Smith makes multiple contentions of error, including (1) that his motion for judgment of acquittal should have been granted because the jury verdict on the conspiracy charge was not sufficiently supported by the evidence, (2) that he should have been awarded a new trial, and (3) that the enhancement of his sentence under 21 U.S.C. § 851 was unconstitutional and erroneous. As explained below, we find no reversible error and affirm.

I.

A.

On February 25, 2003, Smith and eleven others were indicted together in the Western District of North Carolina on a total of sixteen drug-related counts. The first count of the indictment charged all twelve defendants — including Smith and Edward Monroe Little — with involvement in a conspiracy to distribute cocaine and cocaine base (commonly known as "crack" or "crack cocaine") in Iredell, Catawba, and Burke Counties of western North Carolina, from January 1995 until February 2003 ("Count One"). More specifically, Count One charged that the defendants conspired to possess with intent to distribute over fifty grams of crack cocaine and over five kilograms of cocaine, in violation of 21 U.S.C. § 846. Additionally, the third count of the indictment charged Smith with possession with intent to distribute crack cocaine in Catawba County on October 19, 2001, in violation of 21 U.S.C. § 841 ("Count Three"). After the indictment was returned, the prosecution filed an information, pursuant to 21 U.S.C. § 851, seeking to enhance Smith's sentence on the basis of his prior felony convictions: four drug felonies in June 1996 and three drug felonies in October 1997. On April 16, 2004, Smith filed a motion to sever his trial from that of his co-defendant Little,

contending that a joint trial would result in unfair prejudice. The district court denied the severance motion and proceeded to try Smith and Little together.

The trial proceedings against Smith and Little began on May 4, 2004, in Statesville, North Carolina. During voir dire in the jury selection proceedings, the prospective jurors were asked whether they could be fair and impartial. Prospective juror Joy Stutts initially replied that she did not "know if I'd be fair or not because I've never — I'm a housewife. I stay at home all the time and I don't know anything about any of this." S.J.A. 24.[1] When asked whether she could listen to testimony, examine evidence, "decide what the facts are and apply the law that the judge gives you," she initially replied, "I'm not sure." *Id.* Smith moved to have Stutts excused from the jury venire for cause, but the court denied the motion. On further questioning, Stutts answered that she "would try to be" fair but that she "couldn't promise." *Id.* at 26. The Assistant United States Attorney continued to question her as follows:

> Q: Well, do you know of any reason that you couldn't be fair?
>
> A: No.
>
> Q: Okay. Do you have any moral or religious problems following the law?
>
> Q: Do you have any problems taking an oath that you'll follow the law?
>
> A: No.

*Id.* at 27. When Smith's defense lawyer renewed his motion to excuse Stutts for cause, the court again denied the motion, explaining that Stutts had sufficiently confirmed that she would be fair. The jury, as ultimately selected, included Stutts.

---

[1]Citations to "S.J.A. ___" refer to the contents of the Supplemental Joint Appendix filed by the parties in this appeal.

B.

During the four-day trial, the prosecution presented extensive evidence of Smith's involvement in a long-running drug business centered in "The Hill" neighborhood of Newton, in Catawba County, North Carolina. Fred Shuford testified that he had sold crack cocaine to Smith in 1994 and 1995, at which point Smith stopped using drugs and started selling them. Shuford then supplied Smith with progressively increasing amounts of crack cocaine for resale. Tony Young testified that he had purchased crack from Smith three times in 2000, totalling roughly 630 grams. On the third crack deal, Smith travelled to Florida to obtain half a kilogram of crack for Young, which was later distributed by Young and an associate on The Hill.

Several of the defendants named in the indictment made plea deals with the Government and testified against Smith and Little. Jamario Emonite Allred testified that Smith worked for him in The Hill neighborhood in the early 1990s as a "runner," in exchange for drugs, and that Allred had observed Little make numerous drug sales on The Hill in 1994 and 1995. Allred also stated that he had purchased crack cocaine from Smith for resale during 1999 and 2000. Camron Pope testified that he had purchased crack for resale from Smith in 2001, and that he (Pope) twice sold Smith an ounce of crack in 2003. Warren England testified that he had purchased crack cocaine from Smith from the mid-1990s until 2000, and again in 2002. Earnest Edward Squarles, Jr. said that he had twice purchased crack from Smith, in 2000 or 2001, and that he saw Little with some of Smith's associates (co-defendants England and Sherwood Milas Gaither) in locations where Smith, Squarles and others would distribute drugs.

Jermaine Anthony, a prosecution witness who was not a co-defendant, testified that Smith and Little had supplied him with drugs for resale from 1996 or 1997 through 2000. On cross-examination, Smith's lawyer asked Anthony if he had been involved in a 1999 shooting incident, but Anthony denied being present when the shooting occurred. Smith's lawyer continued to press Anthony on the point, attempting to expose his possible bias against Smith — that is, that Anthony had agreed to testify in exchange for favorable treatment from the prosecution. The court curtailed Smith's follow-up questions on the issue, however, ruling the alleged shooting to be irrelevant to

the Count One conspiracy offense, and noting that Anthony's testimony concerning the shooting would be hearsay because he indicated that he had no personal knowledge of the event.

In addition to these witnesses, the prosecution presented the evidence of several law enforcement officers and forensic scientists. Newton police officers testified about the facts underlying the allegations against Smith in Count Three: On October 19, 2001, Smith was arrested by Newton police, who seized from him 3.6 grams of crack cocaine, packaged for distribution, as well as 1.5 grams of powder cocaine and more than $2,300 in cash. Forensic chemist Lisa Edwards of the North Carolina State Bureau of Investigation (the "SBI") testified that the seized substances tested positive for crack cocaine and cocaine, respectively.

In addition, several officers from the Hickory and Newton police departments, as well as SBI forensic technicians, testified to other acts underlying the conspiracy charge in Count One. For example, on August 26, 1995, Smith had been arrested by Newton police, who seized 5.4 grams of a substance from him (the "1995 Arrest"). Glenn Parham, an SBI forensic chemist, testified that lab tests determined the substance to be crack cocaine. On October 29, 2000, Smith had been arrested by Hickory police, who seized .1 gram of a substance from him (the "2000 Arrest"). Sgt. Brian Adams of the Hickory Police Department testified that, when he stopped Smith on that occasion, he obtained Smith's consent for a search and found what appeared to be a plastic bag of crack cocaine in Smith's mouth. When Smith attempted to swallow the bag, Adams forced him to spit out a flake of its contents. An SBI expert testified that the seized flake contained less than .1 gram of crack cocaine.

During the testimony of these officers, it was revealed to the jury that the physical drug evidence from the 1995 and 2000 Arrests had been destroyed pursuant to police department procedures — the 5.4 grams had been destroyed by the Newton police after Smith pleaded guilty in state court in 1996, and the .1 gram had been destroyed in 2003 by the Hickory police after the state court case against Smith was dropped by prosecutors in 2002. Smith's lawyer objected to the introduction of any testimony regarding the drug evidence that had been destroyed, and the prosecution countered by moving in limine

to preclude defense questioning of the prosecution's witnesses about the destruction of the drug evidence, other than to elicit the fact that it had been destroyed. The court granted the prosecution's request and denied Smith's objections, explaining that Smith's desire to cross-examine the prosecution witnesses regarding the destruction of the drug evidence was outweighed by the tendency of such questioning to be confusing, prejudicial, and irrelevant.

In a hearing on the issue, conducted outside the presence of the jury, the court permitted Smith to voir dire the officers about the drug evidence that had been destroyed. When Smith moved again to suppress all testimony relating to the destroyed evidence, the district court again rejected his request, finding that there was "no evidence of bad faith in terms of the handling of the evidence or the execution of the policies concerning it." J.A. 295.[2]

### C.

At the close of the prosecution's case-in-chief, Smith unsuccessfully moved for judgment of acquittal on Counts One and Three, contending that the evidence did not establish the "grand conspiracy alleged in [Count One of] the indictment," and that there was no evidence that the drugs allegedly seized from Smith on October 19, 2001 were possessed with intent to distribute. J.A. 312-14. The defense presented no evidence, and the issues were presented to the jury on May 10, 2004, for resolution. The jury returned a guilty verdict later that day against Smith on Counts One and Three, but found in a special verdict that the conspiracy in Count One involved only a detectable amount of cocaine — not the five or more kilograms alleged in the indictment. The jury also found by its special verdict that the conspiracy charged in Count One involved the distribution of at least fifty grams of a mixture containing a detectable amount of crack.

On May 17, 2004, Smith filed a motion for a new trial and renewed his motions for judgment of acquittal on both convictions. Smith asserted that there was insufficient evidence to establish either the existence of the conspiracy alleged in Count One, or that Smith

---

[2]Citations to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

intended to distribute crack cocaine as alleged in Count Three. On June 22, 2004, the district court denied both motions. *United States v. Smith*, No. 03-12, slip op. at 2 (W.D.N.C. June 22, 2004).

During his sentencing proceedings, Smith objected to any sentencing enhancement based on his prior felony convictions, premising his challenges on the applicability of 21 U.S.C. § 851. Smith contended alternatively that (1) § 851 is unconstitutional, and (2) that the prosecution had failed to establish that his 1996 and 1997 convictions had occurred prior to the Count One conspiracy. On January 10, 2005, the court rejected Smith's contentions with regard to the enhancement and sentenced him to life in prison on Count One and 360 months on Count Three (to run concurrently with the life sentence). On January 11, 2005, Smith filed his notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's denial of a motion, made pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for judgment of acquittal. *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). In conducting such a review, we are obliged to sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by "substantial evidence." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942)). We have defined "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.*

We review for abuse of discretion a district court's denial of a motion, made pursuant to Rule 33 of the Federal Rules of Criminal Procedure, for a new trial. *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003). Under the applicable legal principles, a trial court "should exercise its discretion to award a new trial sparingly," and a jury verdict is not to be overturned except in the rare circumstance when the evidence "weighs heavily" against it. *Id.* (internal quotation marks omitted). Finally, we review for abuse of discretion the evidentiary rulings made by a trial court. *United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005).

### III.

By this appeal, Smith raises multiple issues concerning (1) the district court's denial of his request for judgment of acquittal on the conspiracy charge in Count One, (2) the court's denial of his request for a new trial, and (3) the court's enhancement of his sentence under 21 U.S.C. § 851. We address these issues in turn.

### A.

Smith first contends that the district court improperly denied his motion for judgment of acquittal on Count One.[3] In that regard, he maintains that the evidence was insufficient to prove beyond a reasonable doubt that: (1) he had resumed participation in The Hill drug distribution conspiracy after his release from state prison in 1999; and (2) the illegal activity shown by the evidence constituted a single conspiracy, as opposed to separate, multiple conspiracies.

In assessing whether a guilty verdict is sufficiently supported by the evidence, we are cognizant that the "jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (internal quotation marks omitted). And, in conducting such a review, we are obliged to view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the prosecution. *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003).

### 1.

Smith spent a substantial part of 1998 and 1999 in state prison on various drug convictions. He essentially contends that he withdrew from the Count One conspiracy when he was incarcerated by the State and, when released from state prison in 1999, he did not rejoin the conspiracy. Thus, he asserts, because he withdrew from the conspiracy more than five years before the indictment was returned (Febru-

---

[3]On appeal, Smith has abandoned his claim that he was entitled to a judgment of acquittal on Count Three.

ary 25, 2003), his prosecution on Count One was barred by the five-year statute of limitations established in 18 U.S.C. § 3282(a). Unfortunately for Smith, there was ample evidence at trial to support the jury's conclusion that he actively participated in a drug distribution conspiracy with others in The Hill neighborhood after his release from prison in 1999. For example, Pope purchased various quantities of crack cocaine from Smith in 2001, 2002, and 2003; Young and Squarles bought crack from Smith in 2000 or 2001; and Allred purchased crack from Smith in 1999 and 2000. In addition, narcotics officers in Hickory and Newton seized crack cocaine and large sums of cash from Smith in 2000 and 2001. Given the evidence presented at trial, the court did not err in declining to award Smith a judgment of acquittal on this basis.[4]

2.

Moreover, the evidence was more than sufficient to permit the jury to conclude that the illegal activities of the conspirators constituted a single conspiracy rather than separate, multiple conspiracies. Under the applicable principles, trial evidence is sufficient to establish a single conspiracy where the conspirators are shown to share the same objectives, the same methods, the same geographic spread, and the same results. *See United States v. Pratt*, 351 F.3d 131, 140 (4th Cir. 2003); *United States v. Crockett*, 813 F.2d 1310, 1317 (4th Cir. 1987). Here, the evidence, viewed in the proper light, established that The Hill drug distribution ring involved the same core participants (Smith, Little, and their other co-conspirators) over the same time period (1995 to 2003).[5] And these conspirators were shown to have shared

---

[4]Smith asserts that the court erred in failing to instruct the jury on the statute of limitations issue on the Count One conspiracy. Because Smith failed to request any such instruction at trial our review is for plain error. *See United States v. Matzkin*, 14 F.3d 1014, 1017 (4th Cir. 1994). As explained above, the evidence demonstrated that Smith had participated in the conspiracy within five years of the indictment, and there was no plain error in this respect.

[5]Prosecution witness Shuford testified that Smith began selling crack cocaine that he purchased from Shuford in 1995. Anthony testified that he started buying crack from Smith in 1996 or 1997, in amounts that escalated over the years to three ounces in 2000. England purchased crack from Smith throughout the mid-1990s.

the same objectives and methods: distributing crack in The Hill neigh-
borhood for profit. The prosecution presented substantial evidence to
the jury of coordinated transactions between the various conspirators,
directed to this objective. For example, Squarles testified that, in 2000
and 2001, he had purchased from Smith several quantities of crack
cocaine valued at $300 that he would then resell for $600. He would
then use those funds to purchase additional crack to sell and distribute
on The Hill. Under the evidence before it, the jury was entitled to
conclude that the actions of the various participants in these illegal
activities amounted to a single conspiracy, and the court thus properly
denied Smith's motion for judgment of acquittal on Count One.[6]

## B.

Next, Smith makes five primary contentions in support of his asser-
tion that the district court abused its discretion in denying his motion
for a new trial.[7] These contentions are: (1) that the court erred in its
denial of his severance motion; (2) that it improperly denied his
request to excuse juror Stutts for cause; (3) that it erroneously circum-
scribed his cross-examination of witnesses on the destruction of drug
evidence seized in his 1995 and 2000 Arrests; (4) that the court erred
in permitting the testimony of witnesses who lacked sufficient per-
sonal knowledge; and (5) that it improperly circumscribed his cross-
examination of witness Anthony. We assess these five new trial con-
tentions in turn.

## 1.

First, Smith asserts that the district court improperly denied his
motion to sever his trial from that of his co-defendant Little. As a gen-
eral principle, when defendants have allegedly participated in the
same acts or transactions, they may be indicted and tried jointly. *See*
Fed. R. Crim. P. 8(b); *United States v. Williams*, 10 F.3d 1070, 1079-

---

[6]Smith does not contend that any instructions on this single conspiracy
issue were somehow defective.

[7]Smith also contends that he is entitled to a new trial because the dis-
trict court failed to instruct the jury on the statute of limitations issue
relating to the Count One conspiracy. As discussed *supra* note 4, that
contention is meritless.

80 (4th Cir. 1993). If a particular defendant can show that his trial joinder with a co-defendant would prejudice his right to a fair trial, however, the trial court may, in its discretion, grant a severance. *See* Fed. R. Crim. P. 14(a); *Williams*, 10 F.3d at 1080. Assuming that a joinder of two or more defendants for trial was proper in the first instance, we will not overturn the trial court's denial of a severance motion, unless an appellant can show that the joint trial resulted in a "miscarriage of justice." *Williams*, 10 F.3d at 1080.

In these circumstances, the joinder of Smith and Little's trial was proper in the first instance, and the court did not err in refusing Smith's request for a severance. Count One charged, and the evidence established, that Smith and Little had dealt drugs over the same period of time in The Hill neighborhood, buying from the same suppliers and selling to the same customers. Indeed, a substantial portion of the trial evidence went directly to showing Smith's guilt on the offenses charged. Because Smith is unable to show that the challenged joinder resulted in a miscarriage of justice, the denial of his motion for a severance was not an abuse of the trial court's discretion.

2.

Smith next contends the district court erred in its denial of his new trial request because juror Stutts should have been excused from the venire for cause. Smith maintains that his challenge for cause was meritorious because Stutts's responses on voir dire demonstrated her inability to fairly evaluate the evidence and apply the law in his case.

It is well-settled, of course, that an accused is entitled under the Sixth Amendment to trial by a jury composed of those who will adhere to the law and fairly judge the evidence. *See United States v. Turner*, 389 F.3d 111, 117 (4th Cir. 2004); *see also Conner v. Polk*, 407 F.3d 198, 205 (4th Cir. 2005). Although Stutts indicated some hesitancy in her initial voir dire responses, the overall context of her questioning confirmed that she would understand the trial proceedings, that she would listen to the evidence and apply the law, and that she could be fair to both sides. Indeed, she asserted that she had no problem taking an oath, nor any moral or religious objections against following the law. In these circumstances, we must defer to the sound

judgment of the trial court, which did not abuse its discretion in deny-
ing a new trial on this basis. *See Turner*, 389 F.3d at 117.

3.

As his third basis for his claim that he was entitled to a new trial,
Smith contends that the district court erred in restricting his cross-
examination of law officers concerning their destruction of drug evi-
dence seized from Smith in the 1995 and 2000 Arrests. As explained
below, although the court's limitations on cross-examination were
erroneous, the error was, in the circumstances, harmless.

a.

As noted, Smith sought to suppress — and repeatedly interposed
objections to — the admission of the drug evidence seized during his
1995 and 2000 Arrests, after it became apparent that the drug evi-
dence had been destroyed by the Hickory and Newton police depart-
ments. When Sergeant David Sigmon testified that 5.4 grams of
cocaine had been seized from Smith in 1995 by the Newton police,
he acknowledged that the seized drugs could not be presented at trial
because they had been destroyed. As a result, the court permitted
Smith to voir dire Sigmon on the circumstances surrounding the evi-
dence's destruction. Sigmon said that the evidence had been
destroyed pursuant to routine procedures after Smith entered a guilty
plea to a related state offense in 1996. Although the Newton authori-
ties were unable to locate their records on the evidence's destruction,
Sigmon explained that, when the evidence was destroyed, neither he
nor his department had been aware of any pending investigations or
charges concerning Smith; otherwise, the evidence would have been
retained.

Smith also sought to suppress the drug evidence seized during his
2000 Arrest in Hickory. In that regard, Officer Adams of Hickory tes-
tified that the flake of crack cocaine he had seized from Smith's
mouth on that occasion had also been destroyed. In anticipation of
Smith's desire to cross-examine Adams on this point, the prosecution
proffered that Adams would testify that the drug evidence had been
destroyed "consistent with Hickory Police Department's procedures
and policies," after the state prosecutors determined not to pursue

charges related to the 2000 Arrest. S.J.A. 290. The prosecution requested that the court preclude Smith's lawyer from cross-examining its witnesses regarding the destruction of the drug evidence seized in the two arrests, beyond the fact that it had been destroyed consistent with police procedures. Smith resisted this limitation, contending that the jury, having heard that drugs had allegedly been seized from Smith in 1995 and 2000, was entitled to be aware of the circumstances surrounding the destruction and unavailability of the drug evidence.

The court then permitted Smith to voir dire Adams on the matter. According to Adams (and the dismissal notice filed by the state prosecutor on November 7, 2003) the prosecution dismissed the state charges because Smith was "facing a federal charge." J.A. 413. Adams also testified that the evidence had been destroyed, nine months after Smith was indicted by the federal grand jury, pursuant to the police policy of destroying evidence involving cases which have been voluntarily dismissed. Adams maintained, however, that he had no knowledge of the federal indictment and that he did not order the drugs destroyed to prevent Smith's access to them.

After considering the voir dire evidence of the officers, the district court denied Smith's motions to suppress. In so ruling, the court determined that there was "no evidence of bad faith in terms of the handling of the evidence or the execution of the policies" concerning the evidence. S.J.A. 461. Significantly, the court also declined to permit Smith to cross-examine the trial witnesses regarding the destroyed drug evidence. By the court's ruling, Smith was only permitted to point out that the drug evidence had been destroyed and argue to the jury that the absence of the evidence undermined the prosecution's claims that it was crack.

b.

We review for abuse of discretion a trial court's limitations on a defendant's cross-examination of a prosecution witness. *See United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002). And we review for clear error findings of fact made in connection with suppression motions. *See United States v. Wardrick*, 350 F.3d 446, 451 (4th Cir. 2003). In circumstances where law enforcement officers have failed

"to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant seeking to suppress testimonial evidence must show bad faith on the part of the officers to establish a denial of his due process rights. *See Arizona v. Youngblood*, 488 U.S. 51, 57 (1988); *Lovitt v. True*, 403 F.3d 171, 187 (4th Cir. 2005). As the court found here, Smith was unable to show that the drug evidence from the 1995 and 2000 Arrests was destroyed in bad faith.

In these circumstances, however, the trial court abused its discretion in limiting Smith's cross-examination of the witnesses regarding destruction of the drug evidence seized during Smith's 1995 and 2000 Arrests. As we have repeatedly observed, the right of "cross examination is a precious one, essential to a fair trial." *United States v. Cole*, 622 F.2d 98, 100 (4th Cir. 1980); *see also United States v. McMillon*, 14 F.3d 948, 956 (4th Cir. 1994) ("In a criminal context, cross-examination is an important element of the right of confrontation."). And although a trial court necessarily possesses wide latitude to impose reasonable limits on cross-examination, premised on such concerns as prejudice, confusion, repetition, and relevance, *see, e.g.*, Fed. R. Evid. 403, its exercise of such discretion is limited by the Constitution and the applicable rules of evidence. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *United States v. Turner*, 198 F.3d 425, 429 (4th Cir. 1999). Both the Fifth and the Sixth Amendments guarantee an accused "a meaningful opportunity to present a complete defense." *United States v. Scheffer*, 523 U.S. 303, 329 (1998) (internal quotation marks omitted). Indeed, the Supreme Court has consistently recognized that a trial court should accord a criminal defendant a reasonable opportunity to conduct cross-examination that might undermine a witness's testimony. *See Olden v. Kentucky*, 488 U.S. 227, 233 (1988) (per curiam); *Van Arsdall*, 475 U.S. at 679; *United States v. Abel*, 469 U.S. 45, 52 (1984); *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). And the rules of evidence authorize the cross-examination of witnesses on matters affecting their "credibility." *See* Fed. R. Evid. 607; *see also* Fed. R. Evid. 611(b) ("Cross-examination should be limited to the subject matter of the direct presentation and matters affecting the credibility of the witness."). And, the availability of appropriate cross-examination by an accused is even more essential when the physical evidence, about which the wit-

nesses are testifying, no longer exists. *See United States v. Newsome*, 322 F.3d 328, 334 (4th Cir. 2003) (recognizing that ability to cross examine government witnesses on destroyed evidence with exculpatory value lessens potential constitutional prejudice to defendant); *United States v. Belden*, 957 F.2d 671, 674 (9th Cir. 1992) (observing that prejudice to defendant due to law officers' destruction of evidentiary marijuana plants was mitigated by ability to cross-examine officers).

In limiting Smith's cross-examination of the prosecution witnesses about the 1995 and 2000 seizures, the trial court concluded that any relevance of the cross-examination Smith sought was "extremely slight." J.A. 290-91. In fact, however, the examination Smith sought to conduct was highly relevant to the issues in the case, in that the prosecution witnesses were testifying that the substances were contraband and had been seized from Smith. The trustworthiness and competence of these witnesses related directly to the charges in the indictment, and their credibility was crucial to the jury's assessment of the prosecution's case. *See United States v. Turner*, 198 F.3d 425, 429 n.2 (4th Cir. 1999) ("The partiality of a witness is always relevant as discrediting the witness and affecting the weight of his testimony.").

Importantly, Adams's testimony regarding the destruction of the drug evidence seized during Smith's 2000 Arrest raised obvious concerns. Adams testified — and the November 7, 2003 notice of dismissal in state court indicates — that the state charges were dismissed on account of federal charges which had been pending for nearly nine months. Despite the pending federal charges, the evidence seized in Hickory in 2000 was destroyed, assertedly under a police policy of destroying evidence in cases which have been voluntarily dismissed. To be sure, Adams testified that he was unaware of the pending federal charges when the evidence was destroyed. But given that the state charges were dismissed precisely because of the pending federal charges, cross-examination of Adams on this point would have cut to the core of his credibility and was highly relevant to the issues before the jury. And any resulting prejudice to the prosecution from a thorough examination on the facts surrounding the evidence's destruction was plainly outweighed by Smith's right to inquire into the pertinent circumstances. The district court's contrary conclusion — that the rel-

evance of such cross-examination would have been "extremely slight" — was thus based on a "clearly erroneous assessment of the evidence," and constitutes an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

c.

In these circumstances, however, the trial court's erroneous restrictions on Smith's cross-examination of the prosecution witnesses was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance [in a criminal proceeding] that does not affect substantial rights must be disregarded."). Whether an erroneous evidentiary ruling is harmless in a particular case rests upon an analysis of a host of factors, including:

> the importance of the witness's testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; the extent to which cross-examination was otherwise permitted; and, of course, the overall strength of the prosecution's case.

*Van Arsdell*, 475 U.S. at 684. Here, the overall strength of the prosecution's case was undeniable: There was ample evidence — from multiple witnesses — that Smith was actively involved in the illegal drug business in The Hill neighborhood of Hickory, buying and selling drugs with his co-conspirators during the period of the Count One conspiracy. In addition, the evidence of his drug activity was corroborated by law officers who, in 1995, 2000, and 2001, had seized crack, cocaine and large amounts of cash from Smith. Importantly, the 3.6 grams of crack and 1.5 grams of powder cocaine seized from Smith in October 2001 (by the Newton police) had not been destroyed, and that evidence presumably could have been tested by Smith had he challenged its veracity. Given the strength of the prosecution's case, the court's error in limiting Smith's cross-examination on the destroyed evidence issue was harmless. Consequently, Smith is not entitled to a new trial.

4.

Smith next maintains the trial court improperly permitted several witnesses to testify without sufficient personal knowledge of the mat-

ters to which they testified. *See* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Smith contends that it was error to permit Officer Adams of the Hickory police to testify that "a lot of the residents" in the Hickory public housing project sell crack to supplement their incomes. J.A. 167. Smith asserts that Adams lacked any personal knowledge to support this testimony. Officer Adams testified, however, that he was familiar with drug dealing in the neighborhood of the housing project, and the court was thus entitled to conclude he had sufficient personal knowledge to so testify. And, as the prosecution observes, even if the court erred in admitting this evidence, Adams's testimony on this point, assessed in light of the other evidence of Smith's participation in the Count One conspiracy, was relatively insignificant.

Smith also asserts that it was erroneous to permit Squarles and Allred to testify concerning Smith's reputation for drug dealing. However, both Squarles and Allred had sufficient personal knowledge to support their testimony — they each testified to having participated personally in drug deals with Smith, and any error in permitting them to testify to more general knowledge was also harmless. The district court thus did not abuse its discretion in declining to grant a new trial on this basis.

5.

Finally, Smith maintains that the district court erroneously deprived him of his Sixth Amendment right of confrontation when it refused to permit him to fully cross-examine prosecution witness Jermaine Anthony concerning Anthony's alleged participation in an unrelated shooting. At trial, Anthony testified that he was not present at the alleged shooting, and there was no evidence presented to suggest otherwise. When the prosecution asserted that the cross-examination of Anthony being sought by Smith would not be relevant, the court sustained the objection. In so ruling, the court observed that such evidence would likely be hearsay because Anthony had already testified he was not there.

Although the rules of evidence permit cross-examination of a witness about specific instances of misconduct if probative of truthfulness, the trial court has wide discretion to decide whether (and to what extent) such questioning is proper and relevant. *See* Fed. R. Evid. 608 ("Specific instances of the conduct of a witness [may] in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."). In these circumstances, the trial court did not abuse its discretion in denying Smith a new trial on this basis. *See Hafner v. Brown*, 983 F.2d 570, 576 (4th Cir. 1992) (observing that limitation on impeachment not abuse of discretion given "dubious value" of questioning).

C.

Finally, Smith makes two appellate challenges to the sentences imposed on him by the district court. First, he maintains that 21 U.S.C. § 851, to the extent that it permits a sentencing court to find prior convictions and use them to enhance a defendant's sentence, is unconstitutional under *United States v. Booker*, 543 U.S. 220 (2005). Second, he asserts that the sentencing court misapplied § 851 in this case, because the prosecution failed to prove that Smith's 1996 and 1997 state court convictions were in fact "prior" to the Count One conspiracy. Both of these contentions must be rejected.

Section 851 sets forth procedures to be followed in determining a defendant's prior convictions for sentencing purposes. It requires the prosecutor to notify the defendant and the court, prior to trial or the entry of a guilty plea, of any prior convictions on which the prosecutor intends to rely. *See* § 851(a). A defendant who denies the convictions must file a written response and is entitled to a hearing on the matter. *See* § 851(c). If the court determines that the defendant has the prior convictions alleged by the prosecution, it must enhance the defendant's sentence accordingly. *See* § 851(d)(1). Smith's constitutional challenge centers on the court's role in finding a defendant's prior convictions and enhancing his sentence on that basis.

As a general matter, a sentencing court, in finding facts that increase a defendant's sentence beyond the maximum authorized by the facts admitted by the defendant or found by a jury, contravenes the defendant's Sixth Amendment right to trial by jury. *See Booker*,

543 U.S. at 235. The sole exception to this rule is that a sentencing court may, consistent with the Sixth Amendment, find "the fact of a prior conviction" and use it to enhance a defendant's sentence beyond that otherwise authorized. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Booker*, 543 U.S. at 244 (reaffirming the prior conviction exception); *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998) (holding that prior convictions need not be "treated as an element of [an] offense"). Because § 851 permits judicial factfinding on a defendant's prior convictions, it falls within the prior conviction exception.

To be sure, the Sixth Amendment imposes limitations on *how* a sentencing court may find facts relating to a prior conviction. As we have recognized, in finding such facts, a sentencing court may only look to "'the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record.'" *See United States v. Allen*, 446 F.3d 522, 531 (4th Cir. 2006) (quoting *Shepard v. United States*, 125 S. Ct. 1254, 1263 (2005)). Smith does not contend, however, that the sentencing court looked outside the approved sources in finding his prior convictions; rather, he mounts a broad attack on all judicial factfinding required by § 851. Because the Sixth Amendment permits a sentencing court, within the confines outlined in *Shepard*, to find facts relating to a prior conviction, Smith's constitutional challenge to § 851 is without merit.

On his second sentencing point, Smith asserts that, because the jury did not determine when the Count One conspiracy began or when it ended, the sentencing court was unable to determine that his 1996 and 1997 convictions — which formed the basis for the § 851 enhancement — were, in fact, "prior" convictions which could be used to enhance his sentence. This contention is also without merit. The indictment alleged that the Count One conspiracy began in January 1995 and continued until the indictment was returned on February 25, 2003. Thus, by its verdict finding Smith guilty on Count One, the jury found that the charged conspiracy began in January 1995 and ended in February 2003. Thus, Smith's 1996 and 1997 convictions occurred within the conspiracy period.

When a defendant is convicted of a drug conspiracy under 21 U.S.C. § 846, prior felony drug convictions that fall within the conspiracy period may be used to enhance the defendant's sentence if the conspiracy continued after his earlier convictions were final. *See* 21 U.S.C. § 841(b)(1)(A) (providing penalties for violations of § 846 and stating that prior felony drug conviction may be used to enhance sentence if it is final); *see also United States v. Howard*, 115 F.3d 1151, 1158 (4th Cir. 1997). Because the conspiracy for which Smith was convicted continued well after his 1996 and 1997 convictions became final, those convictions were properly considered prior convictions for purposes of enhancing his sentence.

## IV.

Pursuant to the foregoing, we reject Smith's contentions of error and affirm his convictions and sentence.

*AFFIRMED*