**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4672**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KIRT R. KING, a/k/a Birdman, a/k/a Kirk King,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg.  Joseph Robert Goodwin, Chief District Judge.  (CR-04-127)

Submitted:  August 31, 2007          Decided:  September 10, 2007

Before WILKINSON, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Dennis H. Curry, Spencer, West Virginia, for Appellant.  Charles T. Miller, United States Attorney, R. Gregory McVey, Assistant United States Attorney, Huntington, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kirt R. King was convicted by a jury of conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846 (2000) (Count 1), distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (2000) (Counts 8 and 14), possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (2000) (Count 15), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (2000) (Count 16). The district court sentenced King to 240 total months of imprisonment,[1] as well as five years of supervised release, and ordered payment of a $500 special assessment.[2] By counsel, King filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), in which he asserted that the district court clearly erred in denying his co-defendant's motion[3] for a mistrial pursuant to Fed. R. Crim. P. 29, based on alleged Giglio[4] violations by the

---

[1]The district court sentenced King to 180 months' imprisonment on the cocaine and money laundering charges, followed by a consecutive 60-month sentence on the charge of possession of a firearm in furtherance of drug trafficking.

[2]The probation officer calculated an advisory guideline imprisonment range based on the U.S. Sentencing Guidelines Manual on the drug and money laundering charges of 292-365 months, based on a base offense level of 34, to which three, two-level increases were added, for conviction under 18 U.S.C. § 1956, organizer of the conspiracy, and obstruction of justice, resulting in a total offense level of 40 and a criminal history category of I.

[3]King joined in the objection.

[4]Giglio v. United States, 405 U.S. 150 (1972).

Government, but concluding that there was no merit to the claim. King filed a pro se supplemental brief alleging: (1) violation of his right to speedy trial; (2) the district court erred when it constructively amended Count 16; (3) the district court abused its discretion by giving a "willful blindness" instruction to the jury; (4) the district court erred in denying his Rule 29 motion as to Counts 15 and 16; (5) the district court plainly erred when it failed to give proper jury instructions; and (6) his sentence was unreasonable. For the reasons set forth below, we affirm.

The sole issue raised on appeal by King's counsel is that the district court erred in denying a motion for mistrial based on violations of Giglio by the Government. Specifically, counsel points to the cross-examination of Sherman King, a key confidential informant, which revealed unexpectedly that he worked for the Government previously and had been paid for his services. Following Sherman King's admission that he had worked for the Government in 1995 against "four or five" people, counsel for codefendant Dane Mason objected, stating that he had no previous notice of that Giglio material. Further objections were interposed by the defense as the trial progressed when a further violation of Giglio was discovered by the defense during cross-examination, when Agent Douglas Sturm and confidential informant Tim Wise testified that the Government had taken care of a DUI charge on behalf of

Wise, and it was determined that the Government had failed to disclose this information to the defense prior to trial.

As King failed to object when the district court denied his codefendant's motion for mistrial based on the alleged Giglio violation regarding Sherman King, we review his claim for plain error. United States v. Olano, 507 U.S. 725, 733-37 (1993); United States v. Cedelle, 89 F.3d 181, 185 (4th Cir. 1996). The record reflects that the information regarding Sherman King's previous work as a confidential informant in another case was provided to all counsel at trial, that King had an opportunity to cross-examine Sherman King with regard to the information and materials provided, and that King did not move for a mistrial based on this alleged violation. Given this, we find that King cannot demonstrate that the evidence was material, as there is no showing of any reasonable probability that its earlier disclosure would have produced a different outcome. See United States v. Bagley, 473 U.S. 667, 682 (1985); United States v. Kelly, 35 F.3d 929, 936 (4th Cir. 1994).

In addition, with regard to King's alleged Giglio violation involving Wise, the record demonstrates that King made no motion for a mistrial, and that he failed to object when Dane Mason's motion for mistrial was denied. Moreover, Dane Mason's motion for mistrial was based on a misunderstanding that Wise's statutory witness fee was instead a payment for additional work as a confidential informant.

We find no error by the district court in denying the motions for mistrial based on Giglio violations, nor was there any prejudice to King in the district court's rulings. Thus, King has not established plain error and his claims are without merit.

King, pro se, asserts that his speedy trial rights were violated. Because King did not object at trial, our review is for plain error. Olano, 507 U.S. at 732.

The record reflects that King was indicted on June 15, 2004, and that his trial commenced on November 30, 2004. However, he filed three continuance motions, and the time periods from August 17 through October 5, 2004, and October 5 through November 30, 2004, were properly excludable from the running of the speedy trial clock by virtue of King's filings, as was the district court's granting of two of the motions for continuance. After excluding these periods from the speedy trial calculation, King was tried well within the seventy-day statutory time period required by 18 U.S.C. § 3161 (2000).

King's next pro se challenge is to the district court's alleged constructive amendment to King's indictment when it allowed the Government to remove the structured element from the jury instructions with regard to the money laundering charge in Count 16.[5] A constructive amendment to an indictment occurs when either

---

[5]The charging language of Count 16 alleged that King conspired "to avoid a transaction reporting requirement under State or Federal law," that is, that "Kirt R. King and Lois King . . . did

the government or the court broadens the possible bases for conviction beyond those charged by the grand jury. United States v. Bolden, 325 F.3d 471, 493 (4th Cir. 2003). Again, King's failure to challenge this issue at the district court level renders our review for plain error. Olano, 507 U.S. at 735.

While King is correct that the district court allowed the Government to redact that portion of the indictment regarding the illegal structure of financial transactions, that portion was a small part of the "Manner and Means of the Conspiracy" section of the indictment, and did not affect the elements of money laundering. King has not alleged, nor have we found, any prejudice as a result of the redaction of the language related to structuring, and we find that the evidence presented at trial did not alter the crime charged in the indictment, but rather effected a mere variance, which did not violate King's constitutional rights. See United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). As the essential elements of the money laundering count were not affected by the redaction, the district court's decision to allow the redaction was not a constructive amendment of the indictment and thus, did not broaden the possible bases for conviction beyond those charged by the grand jury. Hence, King's claim is without merit.

----

illegally structure one or more financial transactions to avoid reporting requirements, in violation of 31 U.S.C. § 5324(a)(3)." (J.A. 33, 35).

Next, King asserts that the district court erred in giving a "willful blindness" instruction to the jury. As King acknowledges, we review for abuse of discretion the district court's decision to grant the request for a particular jury instruction. United States v. Abbas, 74 F.3d 506, 513 (4th Cir. 1996). Here, King objects to the court's allowing the Government to include a "willful blindness" instruction to the jury relative to the knowledge of his mother, Lois King, of the illegal nature of the funds involved in the money laundering conspiracy. King seeks to have his conviction relative to Count 16 (money laundering conspiracy) vacated on the ground that if Lois King did not know that the property represented the proceeds from the distribution of cocaine, he could not be guilty of illegally conspiring with her to launder money.

King misconstrues the law for willful blindness, and its applicability to this case. The element of knowledge in the crime of conspiracy may be satisfied by a showing that a defendant acted with willful blindness, as willful blindness is a form of constructive knowledge which "allows the jury to impute the element of knowledge to the defendant if the evidence indicates that he purposely closed his eyes to avoid knowing what was taking place around him." United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991). Because willful blindness serves as a proxy for knowledge, there is nothing inconsistent in the determination that

- 7 -

a defendant knowingly was part of a conspiracy even where willfully blind to the conspiracy's existence and purpose. See United States v. McIver, 470 F.3d 550, 563-64 (4th Cir. 2006). Hence, we find no abuse of the district court's discretion in granting the willful blindness instruction with regard to Lois King, even assuming, arguendo, that the Government failed to prove actual knowledge, nor was there any inconsistency in giving the willful blindness instruction to the jury and allowing the conspiracy charge against King to go to the jury.

King next asserts specific error in the district court's denial of his Fed. R. Crim. P. 29 motions as to Counts 15 and 16. We review de novo the district court's decision to deny a Rule 29 motion. United States v. Smith, 451 F.3d 209, 216 (4th Cir.), cert. denied, 127 S. Ct. 197 (2006). With regard to Count 16 (conspiracy to launder money), King again bases his claim on the perceived inconsistency between the district court's grant of the willful blindness jury instruction for Lois King and the element of knowledge required to establish a conspiracy. For the reasons previously stated, this claim is without merit.

He further asserts error in the district court's denial of his Rule 29 motion for judgment of acquittal as to Count 15 (firearm possession in furtherance of drug trafficking), on the ground that the evidence was insufficient to support the jury charge. Specifically, he contends that the Government's proof

established only that he possessed a firearm "during and in relation to" drug trafficking, and that there was no evidence presented that he possessed the firearm "in furtherance of" drug trafficking, that is, to help, promote, advance, or progress his trafficking of cocaine. Where, as here, the Rule 29 motion was based on a claim of insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942); Smith, 451 F.3d at 216. This court has "defined 'substantial evidence' as 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Smith, 451 F.3d at 216 (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). We "can reverse a conviction on insufficiency grounds only when the prosecution's failure is clear." United States v. Moye, 454 F.3d 390, 394 (4th Cir.) (internal quotation marks and citation omitted), cert. denied, 127 S. Ct. 452 (2006). We "must remain cognizant of the fact that the jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." Burgos, 94 F.3d at 862 (internal quotation marks omitted). To establish a violation of 18 U.S.C.A. § 924(c), the Government must

prove that the defendant possessed a firearm and that the firearm "furthered, advanced, or helped forward a drug trafficking crime." United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (citing examples of "numerous ways in which a firearm might further or advance drug trafficking," such as providing personal protection, peacekeeping, enforcement, and the defense of drugs, drug proceeds, or turf).

The Government presented the trial testimony of Mario Mason, who testified that King carried a weapon when Mason accompanied King on King's cocaine runs, and that individuals had made threats to King. Sherman King testified that King obtained a license to carry a concealed weapon after receiving threats of physical harm from individuals who were known to be involved with drugs. Marcus Henderson testified that while the gun King carried was unrelated to drugs, King kept a gun because people were attempting to harm and take money from King.

Trial evidence further established that on June 2, 2004, when agents entered the home in which King lived to execute a search warrant, a grocery bag containing approximately $25,000 in rolled bills and a loaded H&K .40 caliber handgun was found within King's arm's reach. During a search of the kitchen, agents discovered 116.5 grams of cocaine in the freezer section of King's refrigerator, and a loaded .380 caliber handgun on top of that refrigerator. Additional evidence demonstrated that from 1997

until his arrest, King's sole source of income was from cocaine sales, and that King was known to transport rolled cash in grocery bags as part of the conspiracy.

Thus, the Government presented evidence that King lived in and sold drugs out of the house in which the guns were located, that he acquired the guns for protection, and that the guns were loaded and found in close proximity to drugs, cash, and other indicia of drug activity.  The type of firearms, the proximity of the weapons in relation to the cocaine and drug proceeds, and the testimony that King relied on the weapons for personal protection from other known drug dealers provide the evidentiary bases for the jury's verdict on Count 15.  See Lomax, 293 F.3d at 705; see generally, United States v. Ceballos-Torres, 218 F.3d 409, 412 (5th Cir. 2000).  Viewing the evidence in the light most favorable to the Government and assuming that the jury resolved all conflicts in testimony in favor of the Government, United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998), we find that the evidence was sufficient to support the jury's conclusion that King used the firearms to afford him "some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." United States v. Lewter, 402 F.3d 319, 322 (2d Cir. 2005). Accordingly, we reject King's claim on this issue.

King next asserts abuse of the district court's discretion in its denial of the defense's motion for a jury

instruction regarding the amount of drugs attributable to each defendant. Notably, review of the transcript reveals that counsel for King stated that he had no objections to the jury instructions.

We find that even if King had lodged an objection regarding, or had requested, a jury instruction either for a drug quantity below 500 grams, or an instruction specifying a drug quantity for each defendant, there was no abuse of the district court's discretion in denying such objection or request. See United States v. Abbas, 74 F.3d at 513 (standard of review). The superseding indictment clearly specified that the conspiracy count against King involved distribution of an amount of cocaine of 500 grams or more. The count, along with the quantity of 500 grams or more, was reviewed with the jury by the district court in its jury instructions. The jury found, beyond a reasonable doubt, that King was guilty of conspiracy to distribute 500 grams or more of cocaine. As noted by the district court, the jury was free to acquit any defendant (including King) of the charge, had it determined that that particular defendant had been involved in a conspiracy involving less than 500 grams of cocaine. The sentencing court properly made factual findings concerning sentencing factors, including drug quantity, by a preponderance of the evidence while applying the guidelines as advisory. See United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005) (Booker's remedy demonstrates that judicial fact finding by a preponderance

of the evidence is unconstitutional only when it results in a mandatory increase in the defendant's sentence); <u>United States v. Mares</u>, 402 F.3d 511, 519 (5th Cir.), <u>cert. denied</u>, 126 S. Ct. 43 (2005) (same). Accordingly, there was no error by the district court with regard to drug quantity.

King's final claim is that his sentence is unreasonable, and was imposed in violation of his Fifth and Sixth Amendment rights.[6] Specifically, King asserts that the advisory guideline range of 292 to 365 months as calculated by the probation officer, and considered by the district court, was based improperly on findings by a preponderance of the evidence with regard to his responsibility for distribution of more than fifteen kilos of cocaine, his leadership role in the conspiracy, and his obstruction of justice. He claims that the appropriate guideline range is that based solely on the jury's findings beyond a reasonable doubt, and should have been sixty-three to seventy-eight months, excluding the two-level enhancement for money laundering, of which the jury found him guilty.

---

[6]King also seeks to have this court hold his appeal in abeyance for the Supreme Court's then-pending decisions in <u>Rita v. United States</u>, 127 S. Ct. 2456 (2007), and <u>United States v. Claiborne</u>, 439 F.3d 479 (8th Cir.), <u>cert. granted</u>, 127 S. Ct. 551 (2006). The Court since has dismissed <u>Claiborne</u> as moot because of Claiborne's death, <u>see</u> <u>Claiborne v. United States</u>, 127 S. Ct. 2245 (U.S. Jun. 4, 2007), and has issued its decision in <u>Rita</u>. Thus, we dismiss as moot King's motion for abeyance.

Post-<u>Booker</u>,[7] we will affirm a sentence that is within the statutorily prescribed range and is reasonable. <u>United States v. Moreland</u>, 437 F.3d 424, 433 (4th Cir.), <u>cert. denied</u>, 126 S. Ct. 2054 (2006). The Supreme Court recently upheld this presumption of reasonableness. <u>Rita</u>, 127 S. Ct. at 2462-67. A sentence falling outside the guidelines is not presumptively unreasonable. However, if the sentence was based on an error in interpreting the guidelines or if the court provided an inadequate statement of reasons or relied on improper factors, the sentence will be unreasonable. <u>United States v. Green</u>, 436 F.3d 449, 457 (4th Cir.), <u>cert. denied</u>, 126 S. Ct. 2309 (2006). A sentence outside the guidelines that is justified by reasons tied to § 3553(a) generally will be reasonable. The further the sentencing court diverges from the guideline range, the more compelling the reasons for the divergence must be. <u>Moreland</u>, 437 F.3d at 434. In addition, <u>Booker</u> does not preclude sentencing courts from making factual determinations. In fact, district courts are authorized and required to do so. <u>Id.</u> at 2465-66 (noting that the Supreme Court's "Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence"); <u>United States v. Dalton</u>, 477 F.3d 195, 197 (4th Cir. 2007).

---

[7]<u>United States v. Booker</u>, 543 U.S. 220 (2005).

King's 240-month sentence was well below his properly calculated guidelines range.[8]  We find that the district court here considered all the appropriate statutory and constitutionally mandated factors, as well as the information and arguments presented to it in the course of the sentencing hearing, and it explained adequately its reasons for imposing a sentence below the guidelines range in deciding King's sentence.  The district court fully complied with the mandates of Booker, and King's resulting sentence was reasonable and not in violation of his Sixth Amendment rights.

---

[8]The sentencing transcript reveals that the district court considered the record, the evidence presented at trial at which the judge presided, the presentence report, King's objections to the presentence report, King's statements in support of leniency, and the factors in § 3553(a).  The district court enunciated each § 3553(a) factor it considered prior to imposing sentence on King, specifically referred to Booker at the sentencing hearing, and properly applied the guidelines as advisory.  In explaining its reasons for sentencing King well below the advisory guidelines range, the district court noted that although it had found that King had threatened or intimidated a witness by a preponderance of the evidence for purposes of determining the appropriate guideline range, it declined to include the USSG § 3C1.1 two-level enhancement for obstruction of justice in sentencing him, finding that the crime is separate and distinct from the crimes of which King was convicted and more appropriately evaluated by a jury in a separate proceeding.  In addition, the district court determined that the 180-month, followed by the 60-month, sentence was not more severe than necessary to satisfy the goals and purposes of federal sentencing, and specifically mentioned King's age and lack of any prior criminal history (the district court noted that King's advisory range was substantially higher than that of his codefendants because of the firearm and money laundering charges of which he was convicted), stating that the goal of rehabilitation could not be served if a defendant "can look forward to nothing beyond imprisonment."

In accordance with <u>Anders</u>, we have reviewed the entire record in this case and have found no meritorious issues for appeal. We therefore deny as moot King's motion for abeyance, and affirm his conviction and sentence. This court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

- 16 -