**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MAQSOOD HAMID MIR,
*Defendant-Appellant,* $\Big\}$ No. 05-4985

v.

HOT AND COLD CORPORATION,
*Movant.*

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MIR LAW ASSOCIATES, LLC,
*Defendant-Appellant,* $\Big\}$ No. 05-4989

v.

HOT AND COLD CORPORATION,
*Movant.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-03-156-AW)

Argued: February 1, 2008

Decided: May 6, 2008

Before WILLIAMS, Chief Judge, WILKINSON, Circuit Judge, and
Patrick Michael DUFFY, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Williams and Judge Duffy joined.

---

**COUNSEL**

**ARGUED:** Robert Charles Bonsib, MARCUS & BONSIB, Greenbelt, Maryland, for Appellants. David Ira Salem, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Chan Park, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

Maqsood Hamid Mir and his law firm, Mir Law Associates, LLC, were convicted on various counts of immigration fraud. Mir's principal claim is that conversations two witnesses initiated with him at the government's behest violated his Sixth Amendment right to counsel, because those conversations occurred after Mir had been indicted on the immigration fraud counts. But the retention of counsel for certain indicted offenses cannot give a defendant license to engage in new, unindicted criminal activity. *See Texas v. Cobb*, 532 U.S. 162, 171 (2001). Here the challenged conversations pertained to Mir's alleged commission of the additional crime of witness tampering. To bar their admission into evidence would downgrade society's interest in the integrity and proper functioning of the criminal justice process. We therefore reject Mir's contention and affirm the judgment of the district court.

I.

Maqsood Hamid Mir is an attorney who specialized in immigration law and owned and operated his own law firm, Mir Law Associates ("MLA"). As part of his immigration practice, Mir assisted employers in completing various immigration forms. First, Mir assisted them in

completing Labor Certifications (also known as ETA Form 750s), which are required whenever an employer wishes to sponsor an alien for work in the United States. Employers must certify that they intend to hire the specific alien for a currently available position, and pay him the prevailing wage. Second, Mir assisted employers in executing Petitions for Alien Workers, known as Form I-140s, on behalf of employees who wished to obtain permanent resident alien status in the United States.

Between January 1, 1998 and December 31, 2002, Mir filed close to 2,000 Labor Certifications and numerous Form I-140s. Concerned that some of these submissions contained falsehoods, the government initiated an investigation of Mir and MLA. On January 15, 2003, Mir's attorney sent a letter to the government confirming that he was representing Mir with respect to the government's ongoing investigation of possible immigration fraud.

On March 31, 2003, a grand jury in the District of Maryland returned a thirteen-count indictment charging Mir and one of the employers for whom he worked with conspiracy to commit labor certification fraud and with labor certification fraud, in violation of 18 U.S.C. §§ 371 and 1546 (2000). On January 14, 2004, the grand jury returned a sealed Superseding Indictment against Mir, adding eight additional defendants, including MLA, and adding racketeering charges. *Id.* § 1961.

After the issuance of the original indictment, government agents received information that Mir might be tampering with witnesses. As part of its investigation of possible witness tampering, the government obtained the cooperation of two of the aliens, Chaudhary and Raja, sponsored in Labor Certifications filed by Mir.

At the government's direction, Chaudhary recorded three conversations with Mir. During the first conversation, on December 22, 2003, Mir told Chaudhary to underreport to the government the amount of fees Chaudhary had paid to Mir. During the second, on January 5, 2004, Mir told Chaudhary to withhold information from the grand jury regarding Labor Certification fees, to lie about his work experience, and not to tell the government about his lack of direct contact with the "sponsoring employer" Mir had listed on his Labor Certifica-

tion. During the third, on February 20, 2004, Mir offered to refund fees Chaudhary had paid him if Chaudhary fled the country before being discovered by government agents.

Raja initiated an unrecorded conversation with Mir at the government's behest in November 2003. During that conversation, Mir instructed Raja to lie to the grand jury about Mir's intended legal fees. In exchange for doing so, Mir said he would return fees Raja had already paid.

As a result of this investigation, on December 15, 2004, the grand jury returned a Third Superseding Indictment, which added a witness tampering charge against Mir. Prior to trial, Mir moved to suppress the conversations with Chaudhray and Raja. Mir contended that they had been obtained in violation of the Sixth Amendment, which prohibits the government from eliciting incriminating information after a defendant has been indicted and in the absence of counsel. *See Massiah v. United States*, 377 U.S. 201 (1964).

After a hearing, the district court denied Mir's motion, on the grounds that the statements did not pertain to the fraud offenses for which Mir was charged in 2003, when his attorney was retained, but rather to the "separate and distinct" crime of witness tampering, which was not charged at the time the challenged conversations took place. In so doing, the district court noted that the transcripts of the conversations with Chaudhary could be redacted to ensure that the jury only considered them in relation to the witness tampering charge. The government agreed to redact the transcripts. Further, the district court ordered the government to limit Raja's testimony regarding the November 2003 conversation to the witness tampering count.

Mir then requested severance of the witness tampering charge, which the district court denied, stating that "the Court's limitation and [the] order that we limit the discussion solely to the separate and distinct charge cures any issues associated with severance and *Massiah*." Nevertheless, regarding the Chaudhary transcripts, Mir refused to accept the offer of redaction — and insisted that "for the jury to have the context, we've got to have . . . the remainder of most of the conversations." Mir then asked the district court to let the unredacted transcripts in, and the district court agreed. The district court then

offered Mir the opportunity to craft a limiting instruction with regard to the transcripts. Mir, however, insisted that he could come up with no appropriate limiting instruction.

During a five-week jury trial, the government called approximately thirty witnesses, including two co-defendant employers, five other employers, numerous aliens, and Mir's former employees. One of those witnesses, an employer by the name of Zulfiqar Ali, testified that Mir had filed Labor Certifications and I-140s on behalf of aliens whom Ali did not know and for whom he had no employment position. Ali also testified that Mir told him to stockpile Labor Certifications for future use, and to sell approved Labor Certifications to "substitute aliens" for up to $40,000.00 so that he and Mir could "make money."

Other employers testified that they had worked in conjunction with Mir to list their businesses on Labor Certifications and I-140s when they did not actually need or otherwise qualify to hire the alien named on those documents. One particular employer, Raghib Shourbaji, testified that he and Mir agreed to make up names for false labor certifications. Yet another employer, Abdul Javaid, testified that Mir had filed Labor Certifications on behalf of him and Potomac Automotive, a company he did not own at the time the certifications were filed. Javaid also testified that Mir forged his signature on Labor Certifications, and that Mir filed false tax documents that overstated Potomac Automotive's gross income in order to support future hiring. Finally, numerous aliens testified that Mir had filed false documents on their behalf. Through the testimony of these witnesses, the government established that Mir had filed over one hundred false Labor Certifications and Form I-140s.

The jury convicted Mir of sixteen counts of labor certification fraud (Counts 7-22) and convicted MLA of twenty-one counts of labor certification fraud and conspiracy (Count 1 and Counts 3-22). Mir was acquitted on various other counts, including count twenty-three, charging racketeering; and count twenty-four, charging witness tampering. MLA was acquitted on count two, charging conspiracy to harbor aliens, and on count twenty-four, charging witness tampering. On September 22, 2005, the district court sentenced Mir to 78 months

imprisonment and fined him $25,000.00. The district court fined MLA $200,000.00.

Mir and MLA timely appealed.

## II.

Mir's principal claim is that the admission of his post-indictment statements to Chaudhary and Raja violated his Sixth Amendment right to counsel. Mir argues that the statements either should have been suppressed or that the district court should have severed the witness tampering count from the labor certification counts. We address these arguments in turn.

## A.

Mir first claims that the transcripts of his recorded conversations with Chaudhary and the testimony about his November 2003 conversation with Raja should have been suppressed, because those conversations were intertwined with the indicted offenses of labor certification fraud to which Mir's Sixth Amendment right to counsel had attached.

The Sixth Amendment prohibits the government from deliberately eliciting incriminating statements from the accused "after he ha[s] been indicted and in the absence of . . . counsel." *Massiah*, 377 U.S. at 206. The Sixth Amendment right to counsel, however, is "offense specific," and "cannot be invoked once for all future prosecutions." *Cobb*, 532 U.S. at 167, 173 (citing *Blockburger v. United States,* 284 U.S. 299 (1932)). As such, a defendant's invocation of the right to counsel with regard to a charged offense does not guarantee him the presence of counsel during the investigation of uncharged criminal conduct. *See, e.g.*, *Maine v. Moulton*, 474 U.S. 159, 179 (1985). Thus, "government investigations of new criminal activity for which an accused has not yet been indicted do not violate the Sixth Amendment right to counsel." *United States v. Kidd*, 12 F.3d 30, 32 (4th Cir. 1993).

Applying these principles, we conclude that Mir's Sixth Amendment rights were not violated here. Mir's invocation of his Sixth

Amendment right to counsel as to the labor certification fraud charges did not insulate him from the government's investigation of another separate crime — the serious offense of witness tampering. At the time of the government's investigation of possible witness tampering, Mir's right to counsel had attached only with regard to the labor certification fraud charges for which he had been indicted. In contrast, the conversations whose admission Mir so vigorously challenges here were part of the government's investigation of a completely different offense for which no charges had yet been filed — and therefore for which no Sixth Amendment right had attached. *See Blockburger*, 284 U.S. at 304 (holding that offenses are separate when each requires proof of a fact that the other does not).

Specifically, Mir's recorded conversations with Chaudhary dealt largely with Mir's attempts to obstruct the government's investigation by telling Chaudhray to lie to or withhold information from the grand jury, and to flee the country. Similarly, Raja's testimony regarding the November 2003 conversation was limited to the fact that Mir had instructed him to lie to the grand jury about legal fees. Moreover, in conducting its investigation of possible witness tampering, the government instructed Chaudhary and Raja to ask Mir questions pertaining to possible witness tampering, not to the pending labor certification fraud.

There is, of course, a point of factual overlap between the two offenses — namely, that Mir allegedly attempted to induce false statements by two witnesses to the underlying labor certification fraud. The Supreme Court in *Cobb* made clear, however, that there is no exception to the offense-specific nature of the Sixth Amendment for uncharged offenses that are "factually related" or "inextricably intertwined with" a charged offense. 532 U.S. at 173. In so holding the Court in *Cobb* pointed out that "the Constitution does not negate society's interest in the ability of police to talk with witnesses and suspects, even those who have been charged with other offenses." 532 U.S. at 171-72. Indeed, the Supreme Court has long held that "to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." *Moulton*, 474 U.S. at 180.

The public's interest in criminal investigation is particularly strong here. As Congress recognized when it passed the Victim and Witness Protection Act, "[w]ithout the cooperation of victims and witnesses, the criminal justice system would cease to function." Victim and Witness Protection Act of 1982, Pub. L. 97-291 § 2(a)(1), 96 Stat. 1248, 1248 (1982) (setting forth declaration of purposes). The Sixth Amendment simply does not provide defendants with a license to commit additional crimes with impunity, in this case crimes that bear fundamentally on the ability of the criminal justice system to do its job. We therefore conclude that evidence of the witness tampering was properly obtained and introduced against Mir.

B.

Mir also argues that the district court abused its discretion by denying his motion to sever the witness tampering charge. If evidence on the witness tampering count was admissible in court, he contends, that count should be severed from the underlying labor certification fraud offenses.

Under Federal Rule of Criminal Procedure 8(a), "[t]he indictment or information may charge a defendant in separate counts with two or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." This court has recognized that "Rule 8(a) permits very broad joinder because of the efficiency in trying the defendant on related counts in the same trial." *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005). Moreover, joinder is the "rule rather than the exception," *United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995), because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding. *See, e.g.*, *Cardwell*, 433 F.3d at 385. Nonetheless, under Federal Rule of Criminal Procedure 14(a), "[i]f the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . ."

Mir faces an uphill battle in his severance argument. A defendant seeking severance pursuant to Rule 14 "has the burden of demonstrat-

ing a strong showing of prejudice." *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984). Furthermore, whether joinder is so prejudicial as to warrant severance is a matter committed to the discretion of the district court. The district court's denial of a motion to sever "should be left undisturbed, absent a showing of clear prejudice or abuse of discretion." *Acker*, 52 F.3d at 514.

Mir has not demonstrated that the district court abused its discretion in declining to sever the witness tampering offense. Indeed, severance of the labor certification and witness tampering charges would have made little sense. Mir's witness tampering was designed to obstruct the government's investigation of the labor certification fraud counts by attempting to persuade witnesses to lie before the grand jury and flee the jurisdiction before testifying. Had the charges been severed, the government would have had to introduce evidence pertaining to the labor certification fraud for the second jury to make sense of the witness tampering charge. Trying the witness tampering charge separately would have led to significant inconvenience for the government and its witnesses, and required a needless duplication of judicial effort in light of the legal, factual, and logistical relationship between the charges.

Mir's countervailing prejudice argument rests on the premise that, without severance, there was no adequate way to ensure that the transcripts and testimony recounting Mir's conversations with Chaudhary and Raja would be considered by the jury only as to witness tampering, and not to labor certification fraud. In essence, Mir's argument approaches a *per se* requirement of severance whenever the government investigates new, uncharged crimes that are factually connected to a charged offense. We decline to adopt this principle, which has neither wisdom nor case law to commend it.

Mir points to no case in support of his position that severance of counts is required for someone in his position. Further, the principle Mir advocates cannot be squared with the Supreme Court's recognition of the government's legitimate interest in investigating and prosecuting uncharged criminal conduct. *Moulton*, 474 U.S. at 179-80. Requiring separate trials every time the government obtains post-indictment evidence on a related but distinct crime would generally impede the prosecution of criminal activity. Specifically, awarding a

preference as to severance with respect to acts of witness intimidation would sanction a course nowhere suggested in the Federal Rules.

Moreover, any prejudice resulting from a single trial on multiple counts can be cured by other, less restrictive means than severance. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice" from a denial of severance); *see also Cardwell*, 433 F.3d at 388 (same). This case presents a good illustration. Here, the district court ordered that Raja's testimony be limited only to the discussion of witness tampering. As to the transcripts of Mir's conversations with Chaudhary, the district court offered two other measures — redaction of the transcripts of conversations and a limiting instruction — as precautions against any conceivable prejudice to Mir. However, Mir refused the government's proposed redactions, suggested no redactions of his own, and made no attempt to craft a limiting instruction. For Mir, nothing short of severance would suit.

Mir suggests, however, that it is wrong to adopt a separate crime perspective for purposes of the government's post-indictment investigation and a related counts analysis for purposes of his severance motion. This seems to us to miss the basic point, which is whether Mir at the end of the day could receive a fair trial on the various counts with which he was charged. On this score, we have no doubt. Unlike Mir, we view such measures as redaction, limiting instructions, and the like as commendable ones, designed to ensure both the fairness of the trial and the protection of Mir's Sixth Amendment right to counsel. Mir failed to avail himself of those measures, and he cannot therefore be heard to complain that the district court abused its discretion in declining to sever the labor certification fraud and witness tampering charges.[1]

---

[1] Finally, we note that even if the admission of the challenged statements in any way constituted error under *Massiah*, that error was harmless. *See, e.g.*, *Milton v. Wainwright*, 407 U.S. 371 (1972) (applying harmless error analysis to a *Massiah* violation); *United States v. Melgar*, 139 F.3d 1005 (4th Cir. 1998) (same). As recounted in the facts, the evidence of labor certification fraud was overwhelming, and it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict on the various counts absent the challenged testimony. *See United States v. Jones*, 913 F.2d 174, 177 (4th Cir. 1990).

### III.

We have reviewed appellants' additional claims with care, and we find that they lack merit. In particular, we reject Mir's argument that the district court failed, in its July 3, 2003 order, to explain why the interests of justice were served by a continuance of the commencement of trial beyond the Speedy Trial Act's required seventy-day period. 18 U.S.C. § 3161(c)(1) (2000). Contrary to Mir's assertion, the district court found numerous reasons why the interests of justice were served by a continuance. *See id.* § 3161(h)(8)(A). For example, the district court found that the government needed more time "to obtain information from witnesses in the Middle East," and it pointed out that law enforcement officials had requested that the identity of one of the government's key witnesses be kept confidential for an additional amount of time. Moreover, Mir himself twice moved for additional time to file pre-trial motions. *See id.* § 3161(h)(1)(F) (excluding from the speedy trial time computation "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.").

In addition, Mir's claim that the district court abused its discretion by giving a willful blindness instruction is also unpersuasive. A willful blindness instruction is warranted where, as here, "the defendant asserts a lack of guilty knowledge but the evidence supports an inference of deliberate ignorance." *United States v. Ruhe*, 191 F.3d 376, 384 (4th Cir. 1999). The record contains myriad examples of Mir attempting to shift the blame for the labor certification fraud onto his employees, claiming he was unaware of any criminal activity. This is the type of situation for which a willful blindness instruction was intended, and the district court did not abuse its discretion in giving one.[2]

---

[2]Mir and MLA bring numerous other claims, all of which lack merit. To begin, there was more than sufficient evidence to support the labor certification fraud convictions under Counts 18 through 22, as well as to support the fact that MLA existed as a corporate entity (and thus to support MLA's convictions on count 1 and on counts 3 through 22). Moreover, there was no need for an additional jury instruction regarding the government's burden to prove that MLA existed as a corporation at the

For the foregoing reasons, the judgment of the district court is in all respects

*AFFIRMED*.

---

time of the acts alleged in the indictment, insofar as the district court adequately conveyed that point in its charge to the jury. Finally, the district court's sentence was procedurally and substantively reasonable, as defined by *Gall v. United States*, 128 S.Ct. 586 (2007).