**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 11-4274**

───────────────

UNITED STATES OF AMERICA,

               Plaintiff – Appellee,

     v.

MELVIN DARTFIELD CHRISTIAN, a/k/a Melvin D. Christian,

               Defendant - Appellant.

───────────────

**No. 11-4294**

───────────────

UNITED STATES OF AMERICA,

               Plaintiff – Appellee,

     v.

MELVIN DARTFIELD CHRISTIAN, a/k/a Melvin D. Christian,

               Defendant - Appellant.

───────────────

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  James R. Spencer, Chief District Judge.  (3:10-cr-00200-JRS-1; 3:03-cr-00387-JRS-1)

───────────────

Submitted:  October 26, 2011        Decided:  November 4, 2011

───────────────

Before MOTZ and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

───────────────

Affirmed by unpublished per curiam opinion.

———————————

Michael S. Nachmanoff, Federal Public Defender, Mary E. Maguire, Assistant Federal Public Defender, Caroline S. Platt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Richard D. Cooke, Assistant United States Attorney, Richmond, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In No. 11-4274, Melvin Dartfield Christian appeals from his convictions for possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon, and his resulting 480 month sentence. In No. 11-4294, Christian appeals from the revocation of his supervised release. On appeal, Christian raises various claims in No. 11-4274, but none in No. 11-4294. Thus, he has waived any review of the revocation of supervised release or the imposition of a sentence in that case. We affirm the criminal judgments in both cases.

I.

Christian first challenges the denial of his motion to suppress the evidence found in his car. He contends that the dog sniff in his case was insufficient to establish probable cause to search his car because (1) the dog Tyson was not well trained and was unreliable and (2) Tyson's "alert" was not distinguishable from a dog's common behavior.

The Supreme Court has held that a drug dog sniff is not a search under the Fourth Amendment and a reliable dog alert provides probable cause that illegal drugs are present. Illinois v. Caballes, 543 U.S. 405, 409-10 (2005). Moreover, we have rejected a requirement that "dog alert testimony must

3

satisfy the requirements for expert scientific testimony . . . [because] the dog's alert . . . would serve not as actual evidence of drugs, but simply to establish probable cause to obtain a warrant to search for such substantive evidence." United States v. Allen, 159 F.3d 832, 839-40 (4th Cir. 1998). We have not, however, specifically addressed what, if any, evidence of a drug dog's reliability must be offered.

In this case, the Government provided evidence regarding Tyson's detailed training and continuing certification. Moreover, Officer Rodney Womack testified that, in 2010, Tyson looked for drugs 183 times. During that year, she had at most three false positives, rendering her alerts over 98% accurate.[1] Similarly, while Tyson failed isolated tests during her certification process, she was certified annually since 2008 (and twice in 2010) by the Virginia State Police after testing in various scenarios. Hence, even assuming that we would require some evidence of a dog's reliability before permitting her alert to provide probable cause, the district

---

[1] Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Because probable cause does not require certainty, a low percentage of false positives is not fatal to the finding that a drug detection dog is properly trained and certified. United States v. Scott, 610 F.3d 1009, 1014 (8th Cir. 2010), cert. denied, 131 S. Ct. 964 (2011).

4

court's implicit finding that Tyson was reliable was not clearly erroneous.

Turning to the issue of whether Tyson's "alert" was sufficient, Officer Womack testified that Tyson "turned her head sharply," went to the center post of the driver's side of the car, squared off her body with the post, turned her head slightly, and "started running her nose and snorting at the same time on the center post." Womack testified that the head turn alone was an alert, even without the additional behavior. Christian asserts that such behavior is insufficient to constitute an "alert" and contends that lay witnesses did not see the dog do anything abnormal.

However, the credibility of a dog's alert rests "almost entirely on the credibility of the dog handler's testimony [b]ecause the handler is the only witness who can speak to the subjective interaction during a particular dog alert." United States v. Howard, 621 F.3d 433, 449 (6th Cir. 2010), cert. denied, 131 S. Ct. 1623 (2011). As Officer Womack was trained to recognize Tyson's alert, the fact that other witnesses did not see Tyson do anything specific is of little probative value. Despite evidence and argument that Tyson did not actually alert, the district court found Officer Womack credible. Thus, the district court's determination that Tyson alerted had a proper basis in the evidence and was not clearly

5

erroneous. See United States v. Wilson, 624 F.3d 640, 659 (4th Cir. 2010) (credibility determinations in a suppression hearing are factual findings reviewed for clear error), cert. denied, 2011 WL 380987 (U.S. Oct. 17, 2011).

Accordingly, as the district court's determinations that Tyson alerted and that Tyson was a reliable and certified drug dog were not clearly erroneous, the dog alert provided probable cause for the search. As such, the motion to suppress was properly denied.

## II.

Christian next challenges the sufficiency of the evidence supporting the conclusion that he possessed the firearm in question. We review a district court's decision to deny a Rule 29 motion for a judgment of acquittal de novo. United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006). A defendant challenging the sufficiency of the evidence faces a heavy burden. United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997). The verdict of a jury must be sustained "if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by 'substantial evidence.'" Smith, 451 F.3d at 216 (citations omitted). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's

6

guilt beyond a reasonable doubt." Id. (internal quotation marks and citation omitted). Furthermore, "[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." Beidler, 110 F.3d at 1067 (internal quotation marks and citation omitted). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." Id. (internal quotation marks and citation omitted).

A deficiency of proof on the element of possession would invalidate both of Christian's firearm convictions. To show possession, the Government was not required to show that Christian physically possessed the weapon. See United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992) (noting that, for a felon in possession conviction, the Government may proceed on a constructive possession theory demonstrating that the defendant showed ownership, dominion, or control over the firearm).

Here, viewing the evidence in the light most favorable to the Government, the firearm was found in Christian's car and was easily accessible from the driver's seat. The firearm had Christian's DNA on it, and Christian stated in open court before a state magistrate judge that the car contained a gun.[2]

---

[2] Christian cites United States v. Sanchez, 961 F.2d 1169, 1173 (5th Cir. 1992), for the proposition that, when "evidence gives equal or nearly equal circumstantial support to a theory (Continued)

7

Moreover, Christian does not dispute the sufficiency of the evidence on his drug trafficking conviction, and an expert testified that street level dealers often use firearms. Additionally, crack cocaine was found in a jacket in the backseat of Christian's car and what appeared to be powder cocaine was found on the gun. We conclude that the evidence was overwhelming that Christian possessed the firearm in question. Accordingly, the district court did not err in denying Christian's motion for a judgment of acquittal on this basis.

III.

To convict Christian of violating 18 U.S.C. § 924(c) (2006), the Government was required to prove that Christian:

---

of guilt and to a theory of innocence," we must reverse as "a reasonable factfinder must necessarily entertain a reasonable doubt." Christian avers that he testified at trial that Officer Christopher Womack misquoted his statement in front of the magistrate judge. Thus, he claims that his word against the officer's places the case in equipoise. However, Christian actually misquotes Sanchez, which states that the above is true only when the evidence is in equipoise after viewing the evidence in the light most favorable to the Government. Id. Viewing the conflicting evidence in this case in the light most favorable to the Government would be to assume that the jury found Officer Womack more credible than Christian. See United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994) ("The jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, . . . and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.").

(i) committed a drug trafficking crime and (ii) possessed a firearm in furtherance of that crime. The first element is not in dispute, but Christian asserts that there was insufficient evidence that the firearm was possessed in furtherance of a drug trafficking crime. Whether a firearm furthered, advanced, or helped forward a drug trafficking crime is a question of fact, however. United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). Many factors might lead a reasonable trier of fact to find a connection between a defendant's possession of a weapon and a drug trafficking crime. Id. These include: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id.

We find that the Government presented more than sufficient evidence from which the jury could conclude beyond a reasonable doubt that Christian was guilty of possessing the firearm in question in furtherance of a drug trafficking crime. Christian's possession of the firearm was illegal, as he had been previously convicted of a felony and was prohibited from possessing it. In addition, the firearm was readily accessible, found in the same car as 6.75 grams of cocaine base, and in fact, appeared to have cocaine powder on it. Christian's DNA

9

was found on the gun and the jacket which had the drugs in it, and at his arrest, Christian, a convicted and admitted drug dealer, had $4402 on him. Also found in the car, which was parked in a high crime and high drug area, were baggies and two digital scales. Finally, an expert on drug trafficking testified that street-level drug traffickers (of which Christian was one) commonly use handguns (the type of gun in this case) to enhance their reputation, intimidate the competition, and for retaliatory violence. From these facts, there was sufficient proof for the jury to conclude beyond a reasonable doubt that Christian used the firearm to protect his cocaine supply and drug proceeds.

IV.

Finally, Christian asserts that the district court erred by failing to sentence him under the newly enacted Fair Sentencing Act ("FSA"). The district court determined that, since Christian committed his crimes prior to enactment, the FSA did not apply to him. However, we have not yet addressed the FSA's applicability to convictions involving pre-enactment conduct, but post-enactment sentencing. See United States v. Bullard, 645 F.3d 237, 248 n.5 (4th Cir.) (reserving judgment on the question "whether the FSA could be found to apply to defendants whose offenses were committed before August 3, 2010,

10

but who have not yet been sentenced"), cert. denied, 2011 WL 4536465 (U.S. Oct. 3, 2011). Nonetheless, error in failing to apply the FSA was harmless, and both parties agree with this conclusion.[3] Specifically, Christian's drug conviction (the only one affected by the FSA) is being run concurrently with his felon in possession conviction. Thus, a reduced sentence on the drug charge would not affect the length of time Christian will spend in prison. Regardless of what sentence he receives on the drug count, Christian will be required to serve his forty-year mandatory minimum sentence on the firearm charges. As such, his substantial rights were not affected by any FSA error, and there is no basis for remand. See United States v. Ellis, 326 F.3d 593, 599-600 (4th Cir. 2003) (holding that sentence on concurrent count that was above the applicable statutory maximum did not affect the defendant's substantial rights because he received a life sentence on another count).

Based on the foregoing, we affirm Christian's convictions, revocation of supervised release, and sentences. We dispense with oral argument because the facts and legal

---

[3] Christian states that he raises the issue because, if his firearm convictions are reversed, the FSA would affect his final sentence.

11

contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED