**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-4149

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DEMETRIOS STAVRAKIS, a/k/a Dimitrios Stavrakis, a/k/a Jimmy,

Defendant – Appellant.

No. 20-4184

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DEMETRIOS STAVRAKIS, a/k/a Dimitrios Stavrakis, a/k/a Jimmy,

Defendant – Appellant.

Appeals from the United States District Court for the District of Maryland, at Baltimore. Ellen L. Hollander, Senior District Judge.  (1:19-cr-00160-ELH-1)

Submitted:  December 10, 2021                    Decided:  February 24, 2022

Before WILKINSON, MOTZ, and HARRIS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

_____

**ON BRIEF:** Howard M. Srebnick, Benjamin Samuel Waxman, BLACK SREBNICK KORNSPAN & STUMPF, PA, Miami, Florida, for Appellant. Robert K. Hur, United States Attorney, Paul E. Budlow, Jefferson McClure Gray, Judson T. Mihok, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

This criminal case stems from a 2015 fire at Adcor Industries for which the owner, Demetrios Stavrakis, collected a $15 million insurance payout. Suspicions arose when surveillance video showed Stavrakis tampering with the security system at the front entrance of the building on the evening of the fire. After an investigation, Stavrakis was charged with four federal offenses relating to arson and wire fraud.

A seven-week jury trial ended in convictions on all counts. Stavrakis moved for judgment of acquittal and a new trial, and the district court denied both. In a thorough and carefully reasoned opinion, the district court found that the circumstantial evidence against Stavrakis was sufficient to support his convictions, and rejected a claim that the jury had been improperly instructed on willful blindness. For the reasons given by the district court, we affirm Stavrakis's convictions and the judgment of the district court.

## I.

### A.

#### 1.

This case began with a fire in the early morning hours of July 29, 2015, at a building in Baltimore, Maryland. The building housed Adcor Industries, owned by defendant Stavrakis, a precision parts business serving the beverage, aerospace, firearms, and defense industries. Investigators soon established that the fire was set intentionally, with the ignition of a drum of methanol in an interior office. The fire also appeared to be an inside

3

job:  There was no sign of forced entry, nothing was stolen, and the arsonist disarmed the alarm with the four-digit alarm code.

Stavrakis was interviewed at the scene and professed no knowledge of the fire's origins.  Nor, he claimed, did he know how someone might have entered the building:  He was not normally responsible for locking up and setting the alarm and had not done so on the night in question.  Surveillance video later showed, however, that Stavrakis in fact did lock up and set the alarm on the evening of the fire, and that he had used the opportunity to tamper with an ID-card reader at the front door.

Nobody was injured in the fire.  But the building was damaged and Adcor's insurer, Travelers Indemnity Company of America, paid an approximately $15 million claim.  Some of that money was used to repair the premises and to buy upgraded equipment and machinery.  One repair claim, in particular, would become the subject of a separate fraud charge against Stavrakis:  a $30,000 claim for a modern security system to replace Adcor's previous and outdated system, which had sustained only modest damage in the clean-up after the fire.  Stavrakis also used insurance proceeds to pay off private loans and, as the evidence later would reveal, to purchase luxury items including cars, a motorcycle, watches, and jewelry.

2.

After an eight-month investigation, Stavrakis was charged by indictment with four federal offenses.  Count One charged Stavrakis with violating 18 U.S.C. § 844(h)(1) by using fire to commit a federal felony – specifically, wire fraud, as charged in Counts Two and Three.  Correspondingly, Counts Two and Three charged Stavrakis with wire fraud

4

under 18 U.S.C. § 1343, with Count Two alleging fraud in connection with the $15 million insurance payout and Count Three focusing on the $30,000 repair claim for a new security system. And in Count Four, Stavrakis was charged with malicious destruction of property by fire – colloquially, arson – in violation of 18 U.S.C. § 844(i).

A lengthy and complex jury trial commenced on September 9, 2019. Consuming close to seven weeks, the trial featured the testimony of approximately 60 witnesses and the introduction of roughly 700 exhibits. The district court's opinion sets out in detail the extensive evidence at trial, *see United States v. Stavrakis*, No. 1:19-cr-00160-ELH-1, 2020 WL 607036, at *3–*9 (D. Md. Feb. 7, 2020), and we recount it only briefly here.

It was undisputed that the Adcor fire was the product of arson. The government's theory of the case was not that Stavrakis himself had set the fire – Stavrakis was at home when the fire was reported at approximately 1:30 a.m. on July 29, 2015 – but that he had worked with an accomplice, aiding and abetting the arson in order to collect insurance proceeds. *Id.* at *1. To establish motive, the government introduced "voluminous evidence" that Adcor had been in dire financial straits since 2010, when it lost a lucrative contract with a major customer. *Id.* at *8. In the years between 2010 and the 2015 fire, Adcor had been forced to default on multiple loans, and entered into various forbearance agreements with its lenders. The $15 million recovered on the Travelers insurance policy, the government sought to prove, gave Stavrakis a much-needed cash infusion for his struggling business.

Central to the government's case against Stavrakis was the surveillance video – played for the jury – that showed him tampering with the security system at Adcor's front

5

door on the evening before the fire.  At the end of that workday, the government's evidence showed, Stavrakis took the unusual step of inviting the last employee in the office to join him for dinner.  One minute after she left the building for the restaurant, Stavrakis went directly to the main entrance.  There, a video camera captured him putting tape on the latch of the door before setting the security alarm, disabling a locking mechanism that required entrants to swipe an ID card.  Stavrakis then tested his work, exiting the building and reentering without swiping his own card.  "In other words," the district court explained, Stavrakis confirmed that "by taping the door, [he] defeated a security feature that would have identified the person opening the door."  *Id.* at *5.  Stavrakis then applied more tape to the latch before resetting the alarm and departing.

Sure enough, although Adcor's alarm was disarmed with the four-digit code later that night – first in the lobby, at 12:25 a.m., and then on the shop floor, at 12:33 a.m. – there was no record of an ID card being used to enter the building.  Nor was surveillance video from that critical time ever found; according to Adcor employee Michael Hyatt, the relevant hard drives crashed and then, after they were set aside, were lost.  In fact, many key pieces of evidence disappeared in the wake of the fire:  Shortly after Stavrakis was called to the scene, the tape formerly observed on the front door was removed, as evidenced by a photograph of the door taken early that morning.  And less than a month later – before investigators had reviewed the surveillance video showing Stavrakis at the door – the front office doors themselves were discarded and replaced.  Those indications of a cover-up, the government posited at trial, combined with Stavrakis's financial motive and his facilitation

6

of an anonymous entry, established beyond a reasonable doubt his involvement in the arson.

With respect to Count Three of the indictment, charging fraud in connection with the $30,000 claim for a new security system, the government's evidence showed that the damage to the original system had been minimal: Only two of Adcor's 11 security cameras and an alarm control panel were affected, and repairs likely would have cost less than $3,000. Nevertheless, Stavrakis told employee Hyatt to obtain a quote for an entirely new security system, and a bid for an upgraded system – with additional cameras and better integration across components – was included in the building repair estimate submitted to Travelers. Although Stavrakis himself did not send the bid to Travelers, the government contended, the evidence established that he directed the submission of a fraudulent bid for a complete overhaul of a system that sustained only minor damage.

The defense, for its part, vigorously contested each of the government's charges, offering up other suspects and theories of the case. From the start, when he was first called to the scene of the fire, Stavrakis had identified two former and allegedly disgruntled Adcor employees as potential culprits, and the defense continued to implicate the two men. Both testified at trial as to their innocence; neither was cross-examined by the defense. Stavrakis also offered an exculpatory account of his conduct at the door on the evening before the fire: According to Stavrakis, he used tape on the door – tape that he was carrying with him because he was doing home grouting work – to correct a problem with the alignment of the doors and the alarm sensors. And in any event, the defense contended, there was no video

7

footage or other proof establishing that the arsonist actually entered through the front door, rather than from some other entry point like the hatch on the building's roof.

Stavrakis also disputed the government's portrayal of the financial health of his company, arguing that business was turning around in 2015 after several difficult years, and that he had a backlog of orders by the time of the fire. Moreover, he asserted, the company's loan and forbearance agreements, painted as signs of financial distress by the government, were common practice in the manufacturing business, and he had paid off much of his debt by 2015.

As for the $30,000 security system claim, the defense argued primarily that employee Hyatt, rather than Stavrakis, was responsible for submission of that claim; Stavrakis delegated the matter to Hyatt, and there was no evidence, the defense contended, that Stavrakis knew either the extent of the damage to the original system or the details of the claim. The defense also argued that the claim was not fraudulent because it made clear – and Travelers would know, from its own inspections – that what was contemplated was an upgrade, and that Hyatt in any event had sent the claim only to Adcor's insurance claim adjuster and not to Travelers itself.

At the close of the government's case, Stavrakis moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The district court reserved ruling. The defense renewed its motion orally at the close of its case, and again the court reserved. After two and a half days of deliberation, the jury convicted Stavrakis on all counts.

8

**B.**

After conviction and before sentencing, Stavrakis renewed his motion for a judgment of acquittal and moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. Stavrakis's principal claim was that the evidence was insufficient to support his convictions: The government's case, he argued, was entirely circumstantial, and the inferences needed to establish guilt were too speculative. In his Rule 33 motion, Stavrakis argued, as relevant here, that the district court improperly instructed the jury on willful blindness in connection with the $30,000 security system claim, because there was no evidence that he took deliberate action to avoid learning of a fraudulent submission.[1]

In a comprehensive and well-reasoned opinion, the district court denied both motions. The court recognized at the outset that the government's case against Stavrakis was circumstantial. *Stavrakis*, 2020 WL 607036, at \*1. But circumstantial evidence, the court explained, is treated no differently than direct evidence in assessing its sufficiency. *Id.* at \*2; *see United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989). So long as the evidence, viewed in the light most favorable to the government, could be accepted by a reasonable finder of fact as sufficient to support a verdict of guilt beyond a reasonable doubt, the jury's verdict must be sustained. *Stavrakis*, 2020 WL 607036, at \*2 (citing *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018)).

---

[1] Stavrakis raised several additional claims in his Rule 33 motion, all of which were rejected by the district court. Stavrakis has not appealed those rulings.

9

The court first rejected what had become Stavrakis's primary argument: that the "central" evidence in the case – the video showing him tampering with the security system at the front door – was irrelevant because "there was no actual evidence to support the pivotal conclusion that the arsonist entered through the front door" and not through a hatch on the building's roof or some other door. *Id.* at *9. There was indeed evidence, the court found, from which a reasonable jury could infer that the arsonist entered through the front door, including the fact that the alarm was disarmed first, at 12:25 a.m., in the lobby area immediately adjacent to that door. *Id.* at *9–*10. There also was the "irrefutabl[e]" fact that Stavrakis had taped the front door, and had done so before he attempted to set the alarm – so before he could have experienced the sensor alignment problem that he used to excuse his actions. *Id.* at *9. And a reasonable jury, the court finished, did not have to accept a "wildly speculative" "roof hatch scenario," which would have had the arsonist using a ladder, on a public street, to climb onto the roof and through a hatch that evidence showed could not be opened from the outside. *Id.* at *10.

Similarly, a jury reasonably could decline to adopt Stavrakis's unsupported theory that the fire was the work of an angry former employee. The evidence, as the court explained, was mostly inconsistent with an "ex-employee revenge fire" theory of the case. All indications were that the arsonist was familiar with Adcor's alarm system and layout, and even where the only can of methanol in the building was stored. But he proceeded directly to an unimportant part of the building to ignite the fire, rather than targeting a more important area like the defendant's office. *Id.*

10

On the other hand, the court concluded, there was ample evidence to support the government's theory of motive. The jury was entitled to credit the government's "overwhelming evidence of Adcor's poor financial condition" and need for a cash infusion. *Id.* "To be sure," the court recognized, "proof of motive does not establish guilt." *Id.* But a reasonable jury could consider, as bearing on Stavrakis's intent, the fact that "one person and one person only benefitted" from the fire. *Id.*

In sum, the jury had before it a compelling case – circumstantial, but compelling – from which it could find, beyond a reasonable doubt, that Stavrakis knowingly participated in the arson. *Id.* at \*9. The defendant's contrary arguments, the court explained, "sliced the onion into thin layers" and insisted that each be considered separately. *Id.* But the proper focus is "the totality of the evidence," which in this case was sufficient to support a guilty verdict. *Id.*; *see id.* at \*3 ("Critically, the evidence must be considered 'in its totality[.]'" (quoting *United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008))). "Indeed, the totality [of the evidence here] illustrates the proposition that 'the whole is often greater than the sum of its parts[.]'" *Id.* at \*9 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)).

Separately, the district court considered Stavrakis's challenge to his fraud conviction on Count Three, related to the $30,000 security system claim. *Id.* at \*11. According to Stavrakis, the evidence showed that employee Hyatt had been responsible for that claim, and the government had failed to prove that Stavrakis himself knew of or intentionally participated in any fraud. But that conclusion, the district court held, was not compelled by the evidence at trial. Instead, there was sufficient evidence of Stavrakis's

11

involvement to support a guilty verdict: Stavrakis, as CEO of Adcor, was aware of the actual damage to Adcor's premises; he directed Hyatt to obtain the bid for a complete overhaul of the security system; he met personally with a company that submitted such a bid; and he was copied on Hyatt's email forwarding the bid to Adcor's insurance claim adjuster. *Id.* Though the defense claimed that there was no evidence that Stavrakis ever opened and read Hyatt's email, the court concluded, the "jury was entitled to reject the defendant's effort to insulate himself from the conduct involving the bid." *Id.*

Finally, the district court rejected the claim that it had improperly given a willful blindness instruction. *Id.* at \*11 n.12. The court questioned whether the defendant had preserved his objection, given that "virtually the same instruction" was embodied in another jury instruction to which Stavrakis did not object. *Id.* In any event, the court concluded that the instruction was "generated by the evidence." *Id.* And it had been accompanied by a cautionary instruction, explaining to the jury that "guilty knowledge cannot be established if the defendant had an honest belief in the truth of his representations or if he was merely negligent or foolish." *Id.*

After denying Stavrakis's motions, the district court sentenced him to a total of fifteen years' imprisonment. Stavrakis timely appealed his convictions.

## II.

On appeal, Stavrakis makes two claims: first, that the district court erred in denying his Rule 29 motion for a judgment of acquittal based on insufficiency of the evidence; and second, that the district court erred in denying him a new trial under Rule 33 because the

12

jury was improperly instructed on willful blindness. Stavrakis raises substantially the same arguments he pressed before the district court. And for substantially the same reasons given by the district court in its opinion, we now affirm its judgment.

## A.

We begin with the district court's denial of Stavrakis's motion for a judgment of acquittal under Rule 29. We review de novo a district court's denial of a Rule 29 motion and are "obliged to sustain a guilty verdict that, viewing the evidence in the light most favorable to the prosecution, is supported by substantial evidence." *Osborne*, 514 F.3d at 385 (internal quotation marks omitted).

On appeal, as before the district court, Stavrakis emphasizes the circumstantial nature of the government's case with respect to his participation in the fire, arguing that only impermissible speculation could have allowed the jury to infer that he was involved. But as the district court explained, circumstantial evidence "is not inherently less valuable or less probative than direct evidence," and may alone support a guilty verdict. *See United States v. Williams*, 445 F.3d 724, 731 (4th Cir. 2006). And in precisely this context, we have established that "[w]hen the government offers evidence of the defendant's motives to set [a] fire, his plan and preparation to do so, his opportunity to carry out the plan and evidence that the fire did not occur accidentally," direct evidence is not necessary to sustain a federal arson conviction. *United States v. Martin*, 523 F.3d 281, 289 (4th Cir. 2008) (cleaned up). It is true, as Stavrakis argues, that a jury's "pure speculation" cannot support a guilty verdict. *See United States v. Young*, 916 F.3d 368, 388 (4th Cir. 2019). But a jury may make reasonable inferences from circumstantial evidence, *Martin*, 523 F.3d at 289,

13

and for the reasons carefully detailed by the district court, "substantial evidence" in this case supported a reasonable inference of guilt, *see Burfoot*, 899 F.3d at 334 (describing "substantial evidence" standard); *Stavrakis*, 2020 WL 607036, at \*3–\*11 (describing and assessing evidence).

Stavrakis points as well to certain conflicts in the evidence – conflicts generated by defense evidence that Adcor's financial situation had been stable and improving in the years before the fire, and that there were recurring alignment problems at the front door that could have made Stavrakis's tape a sensible fix. It may be that a jury reasonably could have credited that defense evidence. But this jury did not, and the fact that evidence is "susceptible to alternative interpretations" does not make it insufficient. *See Osborne*, 514 F.3d at 387. As the district court well understood, "resolutions of conflicts in the evidence . . . are within the sole province of the jury and are not susceptible to judicial review." *Stavrakis*, 2020 WL 607036, at \*3 (quoting *United States v. Louthian*, 756 F.3d 295, 303 (4th Cir. 2014)).

Stavrakis also continues to press the possibility that the fire was set by some other suspect using some alternative means of entry. Circumstantial evidence, however, may be sufficient to support a guilty verdict even if it does not "exclude every reasonable hypothesis consistent with innocence." *See Jackson*, 863 F.2d at 1173; *Stavrakis*, 2020 WL 607036, at \*2 (same). And here, as the district court painstakingly recounted, Stavrakis's alternative theories had little if any evidentiary support. *See Stavrakis*, 2020 WL 607036, at \*10. Such "wildly speculative" theories, *id.*, do not undermine a jury verdict.

14

Neither of the two out-of-circuit cases on which Stavrakis relies compels a different result. In both, reviewing courts found insufficient evidence to sustain arson convictions of business owners, like Stavrakis, alleged to have burned their own property for financial reasons. *See United States v. Yoakam*, 116 F.3d 1346 (10th Cir. 1997); *United States v. Makriannis*, 774 F.2d 1164, 1985 WL 13743 (6th Cir. 1985) (unpublished table decision). But sufficiency cases are necessarily highly fact-specific, and in both these cases, the facts were much more favorable to the defendant than they are here. In *Makriannis*, the key evidence against the business owner – that he asked firefighters at the scene about the possibility of a gas leak, which turned out to be the source of the fire – was far more "ambiguous" and less compelling than the evidence marshalled by the government against Stavrakis. *See* 1985 WL 13743, at *2; *Stavrakis*, 2020 WL 607036, at *10–*11. And in *Yoakam*, the government had only a purported financial motive – which the court found no evidence to support – and the fact that the defendant was the last person in the building, *see* 116 F.3d at 1349–50, as compared to the incriminating video footage and voluminous evidence of financial motive introduced here.

Stavrakis also maintains his separate challenge to his conviction on Count Three for wire fraud in connection with the $30,000 security system claim. As before the district court, he emphasizes that he did not himself submit the bid, instead delegating the matter to employee Hyatt, and argues that the government failed to prove his knowing and intentional participation in any scheme to defraud. But as the district court held, while "[t]he jury certainly could have reached that conclusion, as vigorously urged by the defense," it also had before it sufficient evidence to support its contrary verdict: that

15

Stavrakis was aware of and intentionally involved in the submission of an inflated $30,000 claim. *Stavrakis*, 2020 WL 607036, at *11 (describing evidence showing, *inter alia*, that Stavrakis was aware of the damage to Adcor's premises from the fire, directed solicitation of a bid for a full security system upgrade, met personally with a representative of a company submitting a bid, and was copied on an email transmitting the bid).

Finally, Stavrakis argues that in assessing his Rule 29 motion for a judgment of acquittal, the district court should have applied a "rule of equipoise," under which a court should reverse a conviction if "the evidence . . . gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence." *United States v. Caseer*, 399 F.3d 828, 840 (6th Cir. 2005) (internal quotation marks omitted). The parties spend much of their briefing addressing this doctrine and a purported disagreement among the circuits as to its vitality. We have no occasion to wade into that issue, however, because viewed in the light most favorable to the government, the evidence here is not in equipoise. As the district court found, the voluminous evidence introduced over the course of this seven-week trial, taken as a whole, made a substantial and "compelling" case against the defendant. *Stavrakis*, 2020 WL 607036, at *9. And while some of the evidence was in conflict, we must assume, from the jury's verdict, that it resolved those conflicts against the defendant. *See Burfoot*, 899 F.3d at 334. Whatever the status and precise parameters of the "equipoise" doctrine, it has no application here. *See United States v. Christian*, 452 F. App'x 283, 286 n.2 (4th Cir. 2011) (per curiam) (declining to apply rule of equipoise where conflicting evidence, viewed in the light most favorable to the government, is not in fact in equipoise).

16

**B.**

We may dispense more briefly with Stavrakis's challenge to the denial of his Rule 33 motion for a new trial, based on an allegedly improper jury instruction. Under Rule 33, a district court may grant a new trial only if "the interest of justice so requires," Fed. R. Crim. P. 33(a), and a court should "exercise its discretion to award a new trial sparingly," *Burfoot*, 899 F.3d at 340 (internal quotation marks omitted). The district court's denial of Stavrakis's Rule 33 motion is reviewed for abuse of discretion, *id.*, as is its decision to give the challenged willful blindness instruction, *United States v. Jinwright*, 683 F.3d 471, 478 (4th Cir. 2012). We discern no abuse of discretion here.

A willful blindness instruction is warranted where "the defendant asserts a lack of guilty knowledge" – as Stavrakis does in connection with Hyatt's handling of the $30,000 claim – "but the evidence supports an inference of deliberate ignorance." *United States v. Mir*, 525 F.3d 351, 358–59 (4th Cir. 2008) (internal quotation marks omitted). It is true, as Stavrakis emphasizes, that such an instruction is appropriate only if the evidence permits a reasonable inference that the defendant deliberately shielded or insulated himself from knowledge of illegality. *See United States v. Hale*, 857 F.3d 158, 168 (4th Cir. 2017). It is not enough, in other words, that a defendant should have known, but for mere negligence or recklessness, that he was involved in a crime. *Id.*; *cf.* J.A. 2329 (instructing jury that "guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken"). But where the "evidence indicates that [a defendant] purposely closed his eyes to avoid knowing what was taking place around him," then a willful blindness instruction properly allows the jury to impute the element of knowledge.

17

*United States v. Ruhe*, 191 F.3d 376, 384 (4th Cir. 1999) (internal quotation marks omitted).

Here, as the district court concluded, a willful blindness instruction was "generated by the evidence" that the government marshalled for Count Three. *Stavrakis*, 2020 WL 607036, at *11 n.12. As in *Mir*, the record allows for a reasonable inference that if Stavrakis did not have actual knowledge of the submission of a fraudulent $30,000 claim, it was only because he "attempt[ed] to shift the blame . . . onto his employees," first directing Hyatt to obtain a bid for a full replacement system and then taking steps to insulate himself from the ensuing process – including, he suggests, by failing to open and read Hyatt's email regarding the bid. *See* 525 F.3d at 358–59 (finding willful blindness instruction appropriate where employer claimed unawareness of any criminal activity by employees); *Stavrakis*, 2020 WL 607036, at *11. That is the "type of situation for which a willful blindness instruction [i]s intended," we held in *Mir*, 525 F.3d at 359, and the district court did not abuse its discretion in giving the instruction here.[2]

---

[2] The government argues that we should review this claim only for plain error because Stavrakis failed to preserve it below, and the district court also raised questions as to preservation. *See Stavrakis*, 2020 WL 607036, at *11 n.12. We need not resolve that issue, given our holding that the district court committed no error, plain or otherwise, in instructing on willful blindness. Nor need we address the government's alternative argument that any error would have been harmless given the substantial evidence that Stavrakis had actual knowledge of the scheme to defraud. *See United States v. Lighty*, 616 F.3d 321, 378–80 (4th Cir. 2010) (explaining that improper willful blindness instruction is harmless where there is sufficient evidence of actual knowledge).

18

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*